UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JESSE KMEC,

                           Plaintiff,

-against-

PORT AUTHORITY TRANS HUDSON
CORPORATION,

                           Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

09-CV-4542 (ENV)(SMG)

**VITALIANO, D.J.**

      Plaintiff Jesse Kmec brought this action pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 et seq. seeking damages for personal injuries suffered on May 5, 2009 while working as a pump maintainer for defendant Port Authority Trans Hudson Corporation ("PATH"). The case was bifurcated for trial. The liability phase was tried from March 14, 2011 to March 17, 2011, after which the jury found that Kmec and PATH were both 50% responsible for the accident. The damages phase commenced on the same day the liability verdict was rendered, but ended in a mistrial. With a new jury empanelled, the second damages trial commenced on April 11, 2011 and ended on April 14, 2011. The verdict was found by jury interrogatory and awarded the following damages: $75,000 for Kmec's lost wages, $50,889.74 for medical expenses, $25,000 for pain and suffering through the date of the verdict, and $25,000 for future pain and suffering. Plaintiff now moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure solely as to the jury's award for past and future pain and suffering on the ground that the award is shockingly inadequate. For the reasons set forth below, the motion is granted.

# I. BACKGROUND

On May 5, 2009, plaintiff was injured at PATH's "D Yard" facility in Jersey City, New Jersey. At the time, he was working with a group known as the "Flat 21 gang," a group consisting of Kmec and four other PATH employees: John Muresan, Arthur Midili, Thomas O'Neill, and Mark D'Amato. Kmec testified that at approximately 10:30pm, four members of the Flat 21 gang were unloading a 4-inch galvanized steel pipe, approximately 20 feet long, weighing 200 pounds. As Kmec exited a storage shed, he observed the pipe falling from Muresan's shoulder. He ran to try to deflect the pipe away from him. There was testimony that PATH employees like the Flat 21 gang were safety-trained to move away, not toward, a pipe in such conditions, and that Muresan had sufficient control to safely jettison the pipe without any assistance. There was no testimony that Kmec's actions had any effect on avoiding injury to Muresan. In any event, as a result of his intervention, Kmec's left arm was caught between the pipe and a stanchion.

Plaintiff was treated at the Christ Hospital emergency room shortly after the accident and was diagnosed with a displaced fracture of his left ulna (one of the bones in the forearm). Due to the severity of the injury, he was required to undergo surgery. On May 12, 2009, the surgery was performed at Jersey City Medical Center, during which a metal pin was inserted into his wrist to stabilize the wrist joint, and a metal plate and six screws were inserted to secure and realign the fractured ulna. Kmec's left arm was placed in a cast; he attended physical therapy three times a week for three to four months. Kmec also attended a "work hardening" program, which was designed to prepare him to return to work.

Plaintiff did return to work on September 28, 2009 with no restrictions or limitations, after being cleared by his physician and PATH's medical doctor, Dr. Rhonda Whitley. Kmec

testified, however, that he continued to experience pain and weakness in his left arm. He was later diagnosed with a nonunion of the fracture and was prescribed a bone stimulator machine to aid the healing process. After using the machine for approximately 10 hours a day over several months to no avail, Kmec sought a second opinion and underwent a second surgery consisting of an open reduction and internal fixation of the fracture together with a bone graft from his iliac crest (left hip region). A metal plate was again placed over the fracture site and secured with six screws at new anchor points. Dr. John Capo, who performed the second surgery, testified that both surgeries were painful "because the bone breaks and bone actually has nerve endings and as it moves back and forth, it causes pain." He also testified that after each procedure, Kmec likely experienced pain from the surgical incisions. The second procedure also painfully duplicated the first's pain from the placement of his arm in a cast, followed by physical therapy two to three times a week for three to four months.

Following the trail trod after the first surgery, Kmec returned to work on September 15, 2010, with no restrictions or limitations. He testified that he continues to experience shooting pain, throbbing and soreness across his left wrist, and a shooting pain from his wrist to his shoulder. Kmec also testified that the weather affects his level of pain; his wrist is sore when it rains and in the winter he can feel the metal plate in his arm. At the time of the trial, plaintiff was taking a prescription pain killer, Percocet, a couple times a week. Dr. Capo testified further that, though clinically healed, he expected Kmec to experience pain because of the multiple surgical procedures and the metal plate still in his arm. He opined that Kmec might require a third surgery in the future to remove the metal plate from his arm. But, Capo conceded that Kmec was a no show at his last scheduled appointment with him and had not been treated by him since September 7, 2010.

PATH's expert, Dr. Joel Grad, testified that in his opinion Kmec had made a full recovery and was capable of performing his job duties. He nonetheless agreed that the injury and surgeries necessarily caused pain and that Kmec still had objective impairments in both the motion of his left wrist and left forearm. On the other side of the ledger, Kmec acknowledged that he was essentially working and socializing just as he had before the accident.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59, the Court may, on motion, grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." And a new trial "ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 82 (2d Cir. 2006) (quoting Hygh v. Jacobs, 961 F.2d 359, 365 (2d Cir. 1992) (internal citation omitted)).[1] The Second Circuit has instructed that "[w]here there is no particular discernable error . . . a jury's damage award may not be set aside . . . unless the [amount of the award] shock[s] the judicial conscience and constitute[s] a denial of justice." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 165 (2d Cir. 1998).

Critically, "[t]he Rule 59 standard is less stringent than the Rule 50 standard for judgment as a matter of law in two respects: '(1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" In re Vivendi Universal, S.A. Sec. Litig., 07 Civ. 07483, 2011 U.S. Dist. LEXIS 17514, at *12 (S.D.N.Y. Feb. 17, 2011) (quoting Manley v. AmBase Corp., 337 F.3d 237, 244-45 (2d Cir.

---

[1] While remittitur is available to district court judges to adjust excessive jury verdicts, the Seventh Amendment precludes federal courts from employing additur as a means to increase inadequate jury verdicts. See Liriano v. Hobart Corp., 170 F.3d 264, 272 (2d Cir. 1999) ("Under the rule of Dimick v. Schiedt, 293 U.S. 474, 55 S. Ct. 296 (1935), federal courts are denied the same freedom to use additur that is enjoyed by many state court judges.").

2003)). "In weighing the evidence, however, the Court should not ordinarily ignore the jury's role in resolving factual disputes and assessing witness credibility." Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 558-59 (S.D.N.Y. 2010) (internal quotation omitted).

### III. DISCUSSION

On a Rule 59 motion, the Court's discretion to grant a new trial includes an assessment of similar verdicts. No two cases are identical, of course, so "the precedential value of a court's treatment of awards in other apparently similar cases" is limited. Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 750 (2d Cir. 1984) (internal quotation omitted). Nonetheless, in determining the adequacy of a particular verdict, courts typically "review awards in other cases involving similar injuries, while bearing in mind that any given judgment depends on a unique set of facts and circumstances." Nairn v. National R.R. Passenger Corp., 837 F.2d 565, 568 (2d Cir. 1988).

A survey of verdicts involving similar injuries in this region reveals that the jury's pain and suffering verdict in this case is substantially inadequate. In support of his motion, plaintiff identifies a number of New York state cases, the most compelling of which is Boinoff v. Riverbay Corporation, 245 A.D.2d 4, 665 N.Y.S.2d 958 (1st Dep't 1997).[2] In Boinoff, the plaintiff suffered a fractured ulna and underwent a surgery similar to Kmec to set the bone with metal plates and screws. In holding that $20,000 for past pain and suffering "deviate[d] materially from what is reasonable compensation under the circumstances," the court increased the verdict to $60,000 for past pain and suffering and $40,000 for future pain and suffering—double the amount awarded here. Id. While defendant correctly notes that the length of

---

[2] The Court was hard pressed to locate federal cases involving this type of injury, presumably because these cases are typically tried in state court. Likewise, neither party cited any comparable federal cases in their motion papers.

hospitalization in Boinoff was longer than Kmec's and the surgery involved additional complications, there are ample additional cases suggesting that Boinoff was at the low end for a procedure that Kmec, unlike Boinoff, went through twice.[3] See Lantigua v. 700 W. 178th Street Associates, LLC, 27 A.D.3d 266, 267, 811 N.Y.S.2d 364, 366 (1st Dep't 2006) (verdict of "$200,000 for future pain and suffering, for a comminuted, displaced intra-articular left distal radius fracture that required open reduction and internal fixation and a second surgical procedure to remove the metal hardware previously inserted"); Hayes v. Normandie LLC, 306 A.D.2d 133, 761 N.Y.S.2d 645 (1st Dep't 2003) (verdict of $750,000 for pain and suffering for a comminuted fracture of the right radius extending into the right wrist that required the insertion of a metal plate and screws requiring removal in the future). See also Park v. City of New York, 70 A.D.3d 406, 406, 895 N.Y.S.2d 351, 352 (1st Dep't 2010) ($600,000 for past pain and suffering and $400,000 for future pain and suffering for "comminuted fracture to the elbow/arm, multiple surgeries, potential additional surgery, and permanent pain and limitation of motion"); Chase v. OHM, LLC, 75 A.D.3d 1031, 907 N.Y.S.2d 80 (3d Dep't 2010) ($400,000 for past pain and suffering and $442,000 for future pain and suffering for displaced right distal radius fracture[4] of the wrist after being discharged from a rehabilitation facility where treated for right distal femur fracture); Cabezas v. City of New York, 303 A.D.2d 307, 308, 756 N.Y.S.2d 566, 567 (1st Dep't 2003) (plaintiff suffered a comminuted intra-articular distal radius fracture and underwent two operations and court held that "neither the award of $450,000 for past pain and suffering nor

---

[3] While the federal standard for review of damages awarded by a jury is whether the award "shocks the conscience," the state standard in New York is whether the award "deviates materially from what would be reasonable compensation." N.Y. C.P.L.R. § 5501(c). They are essentially the same, requiring much more than simple disagreement with the amount of the award.

[4] The radius is the bone facing the ulna comprising the forearm.

that of $450,000 for 23 years of future pain and suffering deviates materially from what is reasonable compensation.").

On the other side, the cases defendant cites do not materially advance its cause. First, Pohleven v. Cohen, No. 1302088/07, 2010 WL 2277805 (N.Y. Sup. Ct. Oneida County, April 26, 2010), is a case that settled before trial, and, therefore, is, given all the vagaries of the settlement process, irrelevant to the current inquiry on the adequacy of a litigated award. Additionally, Roese v. Bizub, No. 2779/90, 1991 WL 447216 (N.Y. Sup. Ct. Erie County, March 1991) and Lubov v. City of New York, No. 21793/83, 1988 WL 366402 (N.Y. Sup. Ct. Kings County, January 1988) are cases that are at least 20 years old. That fact aside, the cases are still distinguishable. In Roese, the plaintiff was only awarded $15,000 for past pain and suffering and $25,000 for future pain and suffering. But while she suffered a fractured radius and ulna and required open reduction and internal fixation, there is no indication that she underwent two surgeries or suffered pain for as long as Kmec. In defendant's other comparator, Lubov, the plaintiff was awarded $100,000, twice the jury's verdict for Kmec, though there, the plaintiff sustained fractures in his ribs and nose in addition to his ulna and radius. Despite the additional injuries, the result certainly does not support a finding that the jury verdict in the instant case was less than substantially inadequate.

In sum, the Court concludes that the jury's verdict awarding Kmec $25,000 for past pain and suffering and $25,000 for future pain and suffering is not only inadequate, but shocks the judicial conscience. Kmec's injuries were painful, required two surgeries, that, indisputably, involved significant pain both during and after the procedures, which were followed by restricted activities and painful therapy. Both experts testified that Kmec will endure pain in the future, and, Dr. Capo testified that it was more likely than not that Kmec would require a third surgery

in the future. Based on the survey of verdicts in similar recent cases, the jury's verdict as to past and future pain and suffering must be set aside. Consequently, plaintiff's motion for a new trial limited to the amount of damages to be awarded for pain and suffering is granted. See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 23 (2d Cir. 1996). Both parties are directed to appear for a status conference on July 5, 2011 at 11:00 a.m. in Courtroom 4C South to consider any *in limine* objections and explore the possibilities of settlement. Trial will commence with jury selection at 10:00 a.m. on July 25, 2011 before Magistrate Judge Joan M. Azrack.

**SO ORDERED.**

Dated: Brooklyn, New York
June 24, 2011

s/ENV
_____
ERIC N. VITALIANO
United States District Judge